**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MCGRAW PROPERTY SOLUTIONS LLC, a/a/o ATLAS HOLDINGS INVESTMENT, LLC d/b/a BROOKVIEW VILLAGE APARTMENTS, LLC, | ) ) ) ) ) | |
| Plaintiff and Counter-Defendant, | ) ) ) | No. 22-cv-00396 |
| v. | ) ) | Judge Andrea R. Wood |
| WESTCHESTER SURPLUS LINES INSURANCE COMPANY, | ) ) ) ) | |
| Defendant and Counter-Plaintiff. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Atlas Holding Investments, LLC ("Atlas"), a commercial property owner, submitted a storm-damage claim to its insurer, Defendant Westchester Surplus Lines Insurance Company ("Westchester") to recover for alleged physical losses to its property after a wind and hail event. Plaintiff McGraw Property Solutions LLC ("McGraw"), as the assignee of Atlas's claim, subsequently brought this action against Westchester for breach of contract and a declaratory judgment, claiming that Westchester refused to engage in the appraisal process and failed to repair covered damage to the insured premises as required by the insurance policy ("Policy"). In response, Westchester has asserted its own counterclaims for breach of contract and a declaratory judgment, asserting that McGraw violated the Policy by not appearing for an examination under oath ("EUO"). Now before the Court is Westchester's motion for summary judgment or, in the alternative, to compel an EUO and stay litigation of McGraw's claim. (Dkt. No. 22.) For the following reasons, Westchester's motion for summary judgment is granted.

## BACKGROUND

Unless otherwise noted, the following facts are taken from the parties' submissions pursuant to Local Rule 56.1. For purposes of Westchester's summary judgment motion, all reasonable inferences are drawn in favor of McGraw as the nonmoving party.

Atlas owns commercial property located at 4200 W. Lake Avenue in Glenview, Illinois. (Def.'s Answer to First Am. Compl. ("Answer") ¶ 3, Dkt. No. 18.) From May 17, 2019 to May 17, 2020, Westchester insured the property pursuant to the terms of the Policy, which protected against direct physical loss or damage to the insured premises, subject to certain exclusions and limitations. (*Id.* ¶¶ 4–5.) McGraw alleges that, on April 7, 2020, a wind and hail loss occurred at the property that caused damage to the roof and roofing system. (*Id.* ¶ 7.) Atlas subsequently submitted a claim under the Policy and eventually assigned the insurance claim to McGraw, an Illinois limited liability company. (*Id.* ¶¶ 1, 8–10.)

McGraw claims that, on December 1, 2020, Westchester's independent adjuster Cullen Miller notified McGraw that coverage was confirmed and that Westchester would pay for some of the damages to the property caused by the reported event. (Def.'s Resp. to Pl.'s Statement of Facts ("DRPSF") ¶ 2, Dkt. No. 24.) Westchester, however, denies that it ever confirmed coverage or agreed to pay partial damages. (*Id.*) And the affidavit from McGraw's public adjuster Tom Beenken, upon which McGraw relies on for its position, states only that Miller estimated around $50,000 to $60,000 in damages; Beenken does not state that Miller confirmed coverage for the wind and hail loss or that Westchester would pay for some of the damages. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("PRDMSJ"), Ex. 1, Tom Beenken Aff. at 1, Dkt. No. 23-1.)

Westchester later hired an engineering firm, EFI Global ("EFI"), to inspect the property and issue a report. (DRPSF ¶ 3.) McGraw contends that EFI's March 2021 report confirmed that

the storm damage to the property's shingles, roof vents, and other soft metals was consistent with hail and wind. (*Id.* ¶¶ 4–5.) Additionally, McGraw asserts that EFI recommended that the roofing systems with organic mat shingles be replaced but not the roofing systems covered with fiberglass mat shingles; instead, the latter should receive localized repairs. (*Id.* ¶ 7.) In contrast, Westchester argues that EFI reported that the damage to the roof and shingles was not the result of weather events on April 7, 2020, but rather a consequence of several hail and wind events occurring during previous years. (*Id.* ¶¶ 4–6.) Westchester admits that EFI recommended replacements and repairs to the roofing systems; however, it denies that those recommendations were related to McGraw's claimed date of loss of April 7, 2020. (*Id.* ¶ 6.) The report does state that EFI observed damage to the property's roof and roofing system consistent with hail and wind. (PRDMSJ, Ex. 2, EFI Roof Assessment at 15, Dkt. No. 23-2.) Nonetheless, EFI further opines that the observed damage was likely the result of multiple hail events, that winds with an estimated maximum speed of 58 miles per hour or higher were not reported at the property on the claimed date of loss, and that the torn and detached shingles on the roof likely developed over the course of multiple wind events. (*Id.*)

McGraw then retained a public adjuster to inspect the property. (Answer ¶ 16.) It claims that the adjuster determined that all of the property's roofing systems should be replaced. (*Id.*) Westchester disputes McGraw's contention. (*Id.*)

On May 4, 2021, McGraw demanded an appraisal. (DRPSF ¶ 7.) The Policy's appraisal provision, in relevant part, states: "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser." (Answer ¶ 18.) McGraw alleges that Westchester refused to engage in an appraisal and failed to name an appraiser. (DRPSF ¶ 8;

Answer ¶ 22.) In contrast, Westchester denies that it refused to participate in an appraisal; rather, Westchester contends that it informed McGraw that appraisal was premature because the coverage investigation was still ongoing. (DRPSF ¶ 8; Answer ¶¶ 21–22.) Email exchanges in the record reflect that Westchester notified McGraw that its demand for appraisal was premature and Westchester was continuing its investigation into McGraw's claim. (Def.'s Answer to Original Compl. ("DAOC"), Ex. 1, Michael Griffin & Cassandra Sanabria's May Emails at 1, Dkt. No. 11-1.)

In its response to McGraw's appraisal demand, Westchester also requested an EUO on May 6, 2021. (DRPSF ¶ 9.) The Policy's "Duties in the Event of Loss or Damage" section provides:

> a. You must see that the following are done in the event of loss or damage to Covered Property:
> . . . .
> (6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also, permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.
> . . . .
>
> (8) Cooperate with us in the investigation or settlement of the claim.
> . . . .
> b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

(First Am. Compl. ("FAC"), Ex. A, Insurance Policy at 33, Dkt. No. 12-1.)

On May 12, 2021, McGraw offered to send a representative to sit for the requested EUO, stating that it was "more than willing" to do so. (DRPSF ¶ 10; PRDMSJ, Ex. 4, McGraw 5/12/21 Email at 1, Dkt. No. 23-4.) After not receiving a response from Westchester for approximately five weeks, McGraw filed the present lawsuit on June 10, 2021. (DRPSF ¶ 12.) Westchester later

responded on June 15, 2021 with proposed dates in late July for the EUO. (*Id.* ¶¶ 13–14.) Additionally, Westchester informed McGraw that before the EUO occurred it would require further documentation from McGraw to assist in the investigation of its claim, including documentation of the history of other storm events causing damage to the property. (DAOC, Ex. 3, Kelly McGuire's June Email at 2–4, Dkt. No. 11-3.)

On November 9, 2021, McGraw told Westchester to notify it if the EUOs were required, and they could then schedule the EUOs. (DAOC, Ex. 4, Larry Bache & Matthew Ponzi's Emails at 5, Dkt. No. 11-4.) Approximately a month later, on December 13, 2021, Westchester asked McGraw to inform it when McGraw would like to schedule the EUO. (Pl.'s Answer to Counterclaim ("PAC") ¶ 26, Dkt. No. 19.) McGraw subsequently requested that Westchester send it proposed dates on December 14, 2021; Westchester followed up by asking if McGraw was "thinking January?" (Larry Bache & Matthew Ponzi's Emails at 3–4.) McGraw confirmed that it was "thinking January" and proposed two dates in late December. (*Id.* at 3.) Westchester replied that it was unavailable on the proposed dates, so it would suggest additional dates in January. (*Id.* at 2.) On December 14, 2021, McGraw inquired if Westchester had any cases to support the proposition that EUOs must precede an appraisal. (PAC ¶ 29.) Westchester later provided McGraw with four cases and stated that it had not found any contrary authority. (Larry Bache & Matthew Ponzi's Emails at 1.)

To date, Westchester has not appointed an appraiser and McGraw has not participated in any EUOs.

## DISCUSSION

Summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). A genuine dispute exists where "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable [factfinder] could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

With its present motion, Westchester argues that it is entitled to summary judgment in its favor with respect to McGraw's breach of contract and declaratory judgment claims because McGraw failed to satisfy a condition precedent to suit under the Policy—specifically, McGraw failed to appear for an EUO. For its part, McGraw contends that Westchester materially breached the contract by refusing to engage in appraisal, thereby waiving its right to request an EUO and relieving McGraw of any further obligations under the contract.

## I.      Breach of Contract

To prevail on a breach of contract claim under Illinois law, a plaintiff must show: (1) a contract existed; (2) the plaintiff performed the contract's required conditions precedent; (3) the defendant breached the contract; and (4) damages. *Smart Oil, LLC v. DW Mazel, LLC*, 970 F.3d 856, 861 (7th Cir. 2020). Illinois law defines a condition precedent as either a condition that must be met before a contract comes into effect or a condition that must be performed by one party before the other party is bound to perform. *Id.*. At issue here is whether the Policy obligated McGraw to participate in an EUO before invoking the Policy's appraisal provision.

### A.        Breach of EUO and Cooperation Clauses

An insured's failure to cooperate with the insurer provides a valid defense to a breach of contract claim. *See Piser v. State Farm Mut. Auto. Ins. Co.*, 938 N.E.2d 640, 647, 649 (Ill. App. Ct. 2010) (finding that the plaintiff failed to cooperate where, *inter alia*, he did not submit to an EUO or provide all the requested financial documentation). Whether an insured breached a policy's cooperation clause is typically a question of fact, but an insurer is entitled to summary judgment where the insured makes "virtually no effort to produce relevant information." *Hartshorn v. State Farm Ins. Co.*, 838 N.E.2d 211, 214–15 (Ill. App. Ct. 2005) (granting summary judgment where the plaintiff provided only one document and failed three times to appear for an examination) (citing *Horton v. Allstate Ins. Co.*, 467 N.E.2d 284 (1984)). The insured's duty to cooperate arises from the fact that the insurer usually "has little or no knowledge of the facts surrounding a claimed loss, while the insured has exclusive knowledge of such facts," resulting in the insurer being "dependent on its insured for fair and complete disclosure." *Piser*, 938 N.E.2d at 647 (quoting *Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322, 333 (Ill. 1991)). Thus, the EUO and other insurance policy requirements allow an insurer to "possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims." *Passero v. Allstate Ins. Co.*, 554 N.E.2d 384, 387 (Ill. App. Ct. 1990) (quoting *Claflin v. Commonwealth Ins. Co.*, 110 U.S. 81, 94–95 (1884)).

Here, with respect to coverage for commercial property, the Policy states that an insured cannot bring a legal action against the insurer until "there has been full compliance with all of the terms of this Coverage Part." (Insurance Policy at 20.) "This Coverage Part," in turn, is subject to the "Loss Conditions" detailed later in the Policy. (Insurance Policy at 20, 32.) Among those are

the "Duties in the Event of Loss or Damage," including the requirements that McGraw cooperate with Westchester in the investigation or settlement of the claim and submit to an EUO upon request as reasonably required. (Insurance Policy at 33.)

It is undisputed that Westchester requested an EUO on May 6, 2021—that is, before McGraw brought the present action on June 10, 2021. Although McGraw did respond to Westchester's EUO request on May 12, 2021—stating that it was willing to sit for an EUO— McGraw waited only five weeks for Westchester to respond before filing suit. Over the course of this litigation, McGraw still has not produced the requested additional documentation or appeared for an EUO, despite subsequent requests and scheduling attempts by Westchester in June, November, and December 2021. Prior to suit, McGraw's sole effort to comply with the EUO clause was to respond to Westchester's request and express that it was willing to sit for an EUO; however, McGraw never followed up with Westchester before filing suit.

Given the undisputed evidence, the Court finds as a matter of law that McGraw failed to perform its obligations under the Policy by not cooperating with Westchester in its investigation of McGraw's claim and not complying with the EUO clause—a contractual condition precedent to suit.

### B.    Prejudice

Nonetheless, an insured's breach of a cooperation clause only provides a valid defense where the breach "substantially prejudices the insurer in defending the primary action," meaning that the insurer must show that the breach "actually hampered" its defense. *Piser*, 938 N.E.2d at 648 (citing *M.F.A. Mut. Ins. Co. v. Cheek*, 363 N.E.2d 809, 813 (Ill. 1977)).

Westchester asserts that it was prejudiced by McGraw's failure to appear for an EUO and produce requested documentation prior to filing suit because "[the] premature filing required

Westchester to begin litigating this case before it was able to make a coverage determination and investigate the full facts surrounding Plaintiff's storm damages claim. It also prejudices Westchester in determining whether Plaintiff's attempt to invoke the appraisal process in this lawsuit has any merit." (Def.'s Mot. for Summ. J. at 12, Dkt. No. 22.) Indeed, any reasonably jury would conclude that Westchester was substantially prejudiced in defending the present declaratory judgment and breach of contract action, where McGraw is seeking to compel appraisal and requesting damages for Westchester's failure to repair or replace all of the covered damages to the property.

At the time of this suit, Westchester was still in the midst of a coverage investigation and had not yet made a final coverage determination for the April 2020 claimed loss event. Shortly after McGraw brought suit, Westchester again indicated that it was still investigating McGraw's claim and it needed additional information for the EUO on a number of topics, including: (1) the facts and circumstances of the claimed loss event; (2) the scope of damage caused by the claimed loss event; (3) the history of other storm events causing damage to the property; (4) the history of repairs made to the property resulting from previous storm events; and (5) inspection reports and records from prior owners. (Kelly McGuire's June Email at 2–3.) Therefore, Westchester has demonstrated that it was actually hampered in its defense of McGraw's claims because it did not possess sufficient information for its coverage investigation and ultimate coverage determination.

Accordingly, the Court finds that Westchester has established the failure to cooperate defense.

## II.     Material Breach Doctrine

The Court next addresses whether McGraw was excused from performing its contractual obligations, such as sitting for EUOs, because Westchester materially breached the Policy first.

McGraw contends that Westchester breached the contract when it did not comply with McGraw's demand for an appraisal; consequently, McGraw was no longer required to abide by the Policy's post-loss obligations for the insured.

An insurance policy's appraisal clause is "enforceable in a court of law," and a court may compel compliance with it. *Lundy v. Farmers Grp., Inc*., 750 N.E.2d 314, 318 (Ill. App. Ct. 2001). "A material breach of a contract provision by one party may be grounds for releasing the other party from his contractual obligations." *Mohanty v. St. John Heart Clinic, S.C.*, 866 N.E.2d 85, 95 (Ill. 2006) (citation omitted). A breach is considered material if it is "so substantial and fundamental as to defeat the objects of the parties in making the agreement, or whether the failure to perform renders performance of the rest of the contract different in substance from the original agreement." *InsureOne Indep. Ins. Agency, LLC v. Hallberg*, 976 N.E.2d 1014, 1027 (Ill. App. Ct. 2012) (internal quotation marks and citation omitted).

Illinois courts have not squarely addressed whether an insured's invocation of a policy's appraisal clause relieves that party of its contractual post-loss duties if the insurer does not engage in appraisal first. When a federal court sitting in diversity does not have any relevant state law authority to consult to interpret how the state's highest court would rule, the court "shall examine the reasoning of courts in other jurisdictions addressing the same issue and applying their own law for whatever guidance about the probable direction of state law they may provide." *In re Zimmer, NexGen Knee Implant Prod. Liab. Litig.*, 884 F.3d 746, 751 (7th Cir. 2018) (internal quotation marks and citations omitted).

Some courts have considered whether an insured's invocation of a policy's appraisal clause means that an insurer breaches the contract if the insurer does not immediately proceed with appraisal and insists that the insured comply with its post-loss obligations in the policy.

Simply put, these courts have held that an insured must fulfill its contractual post-loss duties before it can seek appraisal. *See, e.g.*, *Baldwin Mut. Ins. Co. v. Adair*, 181 So. 3d 1033, 1043, 1046 (Ala. 2014) (noting that an insured must comply with post-loss obligations for an insurer to determine whether it agrees or disagrees with the insured's amount of loss claim); *Safepoint Ins. Co. v. Sousa*, 275 So. 3d 684, 686 (Fla. Dist. Ct. App. 2019) ("[A]ppraisal and suit are premature when the [i]nsured has failed to comply with . . . post-loss conditions."); *Darmer v. State Farm Fire & Cas. Co.*, No. CV 17-4309, 2018 WL 3325908, at *5 (D. Minn. July 6, 2018) (stating that an insurer needs adequate information about the alleged amount of loss before it can make a valuation); *Hailey v. Auto-Owners Ins. Co*., 640 S.E.2d 849, 855 (N.C. Ct. App. 2007) (concluding that an insured's compliance with post-loss duties prior to appraisal is necessary otherwise these policy terms would become meaningless).

This Court finds that *United States Fidelity & Guaranty Co. v. Romay*, 744 So. 2d 467 (Fla. Dist. Ct. App 1999), offers a persuasive rationale for adopting this approach. In *Romay*, the insureds invoked appraisal before submitting sworn proofs of loss or sitting for an EUO. *See* 744 So. 2d at 469. As a result, the court concluded that it would be unreasonable for an insured to be able to compel appraisal without fulfilling its post-loss obligations because:

> If that were so, a policyholder, after incurring a loss, could immediately invoke appraisal and secure a binding determination as to the amount of loss. That determination, in turn, could be enforced in the courts. Under that framework, expressed and agreed-upon terms of the contract, i.e., the post-loss obligations, would be struck from the contract by way of judicial fiat and the bargained-for contractual terms would be rendered surplusage.

*Id.* at 471. The court also explained that an appraisal provision "contemplate[s] that the parties would engage in some meaningful exchange of information sufficient for each party to arrive at a conclusion before a disagreement could exist." *Id.* at 470.

11

Here, the Policy's appraisal provision declares that "[i]f we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." (Insurance Policy at 32.) When McGraw sought appraisal, Westchester replied that appraisal was premature, and that Westchester would be requesting an EUO for its coverage investigation into McGraw's claim. (DRPSF ¶¶ 8–9; Answer ¶¶ 21–22.) The Court determines that before McGraw could seek appraisal, it was required to first comply with the Policy's post-loss duties, including submitting to an EUO and producing relevant records. It would be nonsensical to require an insurer to engage in appraisal while the insurer is still conducting its investigation and before the insured complied with its post-loss obligations, since this would affect the insurer's ability to ascertain its estimate of the amount of loss. Despite Illinois courts not having ruled on this specific issue, this approach aligns with the emphasis Illinois courts have placed on an insured's duty to cooperate with insurers because of the information asymmetry between the insured and insurer about a claimed loss event. *See, e.g.*, *Piser*, 938 N.E.2d at 647; *Waste Mgmt., Inc.,* 579 N.E.2d at 333.

Therefore, the Court finds that no reasonable jury would find that Westchester materially breached the Policy by refusing to participate in the appraisal process at the time McGraw invoked appraisal.

## III.     Waiver of Condition Precedent

Finally, McGraw argues that Westchester waived its contractual right to demand an EUO by (1) failing to request an EUO until five months after Westchester's adjuster informed McGraw that it was tendering coverage; (2) failing to demand an EUO until after McGraw invoked the Policy's appraisal provision; and (3) failing to timely respond and schedule the EUO after McGraw notified Westchester that it was willing to sit for an EUO.

Waiver is the "intentional relinquishment of a known right"—it can be either express or implied. *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 282 (Ill. 2004) (citation omitted). "An implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it." *Id.* (citation omitted). It is a question of law whether waiver has been established only where there is "no dispute as to the material facts and only one reasonable inference can be drawn." *Dustman v. Advoc. Aurora Health, Inc.*, 192 N.E.3d 47, 54–55 (Ill. App. Ct. 2021) (internal quotation marks and citation omitted) (holding that the defendants' prior conduct of ignoring the plaintiffs' requests for arbitration did not "clearly and unmistakably" evidence a subjective intention by the defendants to forfeit their right to arbitrate all future disputes).

As an initial matter, McGraw's contention that Westchester's adjuster confirmed coverage for the claimed loss event is belied by the record. As previously noted, the affidavit from McGraw's public adjuster Tom Beenken asserts only that Westchester's adjuster estimated around $50,000–$60,000 in damages; he did not state that the adjuster confirmed coverage for the wind and hail loss or that Westchester would pay for damages. (Tom Beenken Aff. at 1.)

Additionally, the Court finds that no reasonable jury could conclude that Westchester failing to demand an EUO until two days after McGraw demanded appraisal, or Westchester not responding for five weeks to McGraw's offer to sit for the requested EUO, was inconsistent with any intention other than to waive its right to an EUO. In fact, Westchester's conduct in requesting an EUO two days after McGraw demanded appraisal, responding with proposed dates for an EUO five days after McGraw brought the present action, and continuing to attempt to schedule the EUO in the following months undermines any waiver argument. Furthermore, McGraw presents no authority to support its assertions.

13

Accordingly, the Court concludes that Westchester is entitled to summary judgment on McGraw's breach of contract and declaratory judgment action because McGraw failed to comply with the Policy's conditions precedent to bringing suit.

### CONCLUSION

For the foregoing reasons, Westchester's motion for summary judgment (Dkt. No. 22) is granted. Westchester is granted summary judgment on Counts I and II of McGraw's complaint.

ENTERED:

Dated:  April 19, 2024

Andrea R. Wood
United States District Judge